# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRST TRUST ADVISORS, L.P., | ) |
| Plaintiff, | ) |
| v. | ) No. 17-cv-09009 |
| VIRTU AMERICAS LLC, | ) Judge Andrea R. Wood |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff First Trust Advisors ("FTA"), an investment advisor, brought this action against Defendant Virtu Americas LLC ("Virtu"), a broker-dealer, alleging state common law claims for breach of contract and promissory estoppel arising from Virtu's alleged failure to timely execute securities trades on FTA's behalf. FTA originally filed this case in state court and Virtu subsequently removed it here, contending that removal was proper because FTA's claims arise under the federal securities laws. Now before the Court is FTA's motion to remand the case back to state court. (Dkt. No. 15.) Because the Court agrees that FTA's claims do not arise under federal law, the motion is granted.

## BACKGROUND

For purposes of the instant motion, the factual allegations in the complaint are accepted as true and all reasonable inferences from those facts are drawn in favor of FTA. *See, e.g.*, *McKerr v. Bd. of Trade of the City of Chicago, Inc.*, No. 12 C 5008, 2012 WL 3544866, *1 (N.D. Ill. Aug. 15, 2012).

As alleged in the complaint, FTA is an investment adviser registered with the Securities and Exchange Commission ("SEC")[1] that provides investment advisory services to registered investment companies and institutional investors. (Compl. ¶ 1, Dkt. No. 1-1.) Virtu is a broker-dealer registered with the SEC[2] and a member of the Financial Industry Regulatory Authority ("FINRA")[3]. (*Id*. ¶ 2.) Virtu executes buy and sell orders of securities for its customers.

FTA is the investment adviser for three exchange-traded funds ("ETFs")[4] established in the United States and the investment manager of a sub-fund established in Ireland (collectively, "the Funds"). (*Id*. ¶¶ 5, 6.) FTA manages the investments of each Fund. FTA's responsibilities include the determination of which securities will be purchased, retained, or sold by each Fund and the selection of broker-dealers to execute the trades. (*Id*. ¶ 6.) Management of the Funds includes "rebalancing" and "reconstituting"—*i.e.*, periodically buying, holding, and selling securities in a manner to replicate the underlying indexes on which the ETFs are based. (*Id*. ¶ 13.) Each of the Funds is rebalanced and reconstituted quarterly during the calendar year. (*Id*. ¶ 15.)

Since March 2013, FTA has utilized Virtu as an executing broker-dealer to implement quarterly rebalancing and reconstituting on behalf of the Funds by buying and selling securities for the Funds. (*Id*. ¶ 16.) The complaint alleges that throughout their trading relationship, Virtu

---

[1] *See* 15 U.S.C. § 80b-2(a)(11) (defining "investment adviser"); 15 U.S.C. § 80b-3 (requiring investment advisers to register with the SEC).

[2] *See* 15 U.S.C. § 78c(a)(4) (defining "broker"); 15 U.S.C. § 78c(a)(5) (defining "dealer"); 15 U.S.C. § 78*o* (requiring registration of brokers and dealers).

[3] FINRA is a national securities association registered with the SEC. *See, e.g.*, *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1048 (2d Cir. 2014) (discussing FINRA); 15 U.S.C. § 78*o*-3 (governing national securities associations). "Federal law requires most securities firms to register with FINRA. [] FINRA creates and enforces rules that govern the securities industry and those rules must be approved by the SEC." *NASDAQ*, 770 F.3d at 1048 (citing 15 U.S.C. § 78*o*-(b) (requiring registration with a national securities association); 15 U.S.C. § 78s(b)(1) (requiring rule submission and SEC approval)).

[4] Exchange-traded funds are marketable securities that trade similarly to stocks and are listed on an exchange. United States ETFs list and principally trade their shares on the NASDAQ stock exchange. (*Id*. ¶¶ 7, 8.)

and FTA have agreed that, in exchange for commission payments, Virtu would, on FTA's instructions, timely execute trades to buy or sell particular securities for the Funds in accordance with those instructions. (*Id*. ¶ 17.) Specifically, FTA requested that trades be executed by Virtu according to specific instructions or orders for the rebalancing and reconstituting of the Funds' portfolios. (*Id*. ¶ 19.) One type of written order that FTA commonly used to communicate instructions to Virtu in connection with the rebalancing of the Funds' portfolios was called a "market on close" ("MOC") order. According to the complaint, a MOC order instructs the executing broker-dealer to buy or sell a given security at the closing price in the appropriate market at the end of the trading day on which the MOC order is placed by the customer. (*Id*. ¶ 20.) New York Stock Exchange ("NYSE") and NASDAQ stock exchange rules require MOC orders to be entered electronically by the executing broker by either 3:45 p.m. EST (for the NYSE) or 3:50 p.m. EST (for NASDAQ) because the market closes at 4:00 p.m. EST. (*Id*. ¶ 21.) On all occasions prior to October 6, 2017, Virtu properly executed the MOC orders delivered to Virtu by FTA. (*Id*. ¶ 22.)

On October 6, 2017, FTA on behalf of the Funds submitted written MOC orders to Virtu. (*Id*. ¶ 24.) Virtu acknowledged the MOC orders in writing shortly thereafter. (*Id*. ¶ 24.) Prior to market close, John Capuano of Virtu contacted Lance Hinkle of FTA by telephone to ask if any of the MOC trades should be executed prior to market close due to liquidity concerns. (*Id*. ¶ 25.) Hinkle informed Capuano that all trades were to be executed at the market close. (*Id*.) After the market closed, Capuano contacted Hinkle again by telephone and advised him of Virtu's failure to execute the MOC trades due to technical issues related to a software glitch in the Virtu trading system that resulted in the trades getting cancelled. (*Id*. ¶¶ 26–28.) During that call, Capuano promised Hinkle that Virtu would make the Funds whole for any damages caused by the failure to

complete the MOC trades at the market prices existing at the close of the market on October 6, 2017. (*Id*. ¶ 29.) Capuano also told Hinkle that Virtu would complete the MOC trades when the markets opened on the following Monday, October 9, 2017. (*Id*. ¶ 30.) Indeed, the MOC trades were executed on Monday, October 9, 2017 but at prices different than those existing at market close on October 6, 2017. *(Id*. ¶ 33.) As a result of the MOC trades being executed at various times on October 9 rather than on October 6, the Funds lost upwards of $5 million. (*Id*. ¶¶ 35, 48.) FTA compensated the Funds in full for their losses and in exchange the Funds assigned to FTA all the Funds' claims against Virtu. (*Id*. ¶ 40.)

After FTA filed its complaint in DuPage County Circuit Court, Virtu filed a notice of removal, contending that this Court has original jurisdiction over the matter under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because FTA's claims arise under the federal securities laws. FTA's instant motion to remand followed.

## DISCUSSION

A civil action brought in state court may be removed to federal court by a defendant only if the federal court has original subject-matter jurisdiction over the action. 18 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction. *See, e.g., Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Id*.

Federal district courts have original jurisdiction over all civil actions "arising under" federal law. 28 U.S.C. § 1331.[5] A case may arise under federal law in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). First, a plaintiff may plead a "cause of action created by federal law;"

---

[5] Defendant does not assert that this Court has original subject-matter jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332. At a status hearing in this matter, Defendant acknowledged that it does not presently have sufficient information to permit it to take a position as to whether there is complete diversity of citizenship among the parties.

4

or second, a plaintiff may assert claims where, even though state law creates the cause of action, the "state-law claims []implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) ("A case 'aris[es] under' federal law . . . 'if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 462 U.S. 1, 27–28 (1983))). The second category is "special and small," *Empire*, 547 U.S. at 699, and "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 311. The Supreme Court has outlined four factors that must be present to for a case to fall under this second category: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313) (hereinafter, "*Gunn/Grable* factors").

Critically, under either category, "a potential federal defense is not enough to create federal jurisdiction under § 1331." *Chicago Tribune Co. v. Bd. of Tr. of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012); *see also Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995) (explaining that a federal question "that merely serves as a defense to a state law action . . . does not confer federal question jurisdiction," and so "the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading"). Rather, the grounds for

federal jurisdiction must be clear on the face of the complaint. *Franchise Tax Bd.,* 463 U.S. at 9. However, a court may uphold removal despite the absence of a federal question on the face of the complaint where the court concludes that a plaintiff has "artfully pleaded" in order to omit necessary federal questions. *See, e.g.*, *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

With respect to the *Gunn/Grable* factors, for a federal issue to be "necessarily raised," "resolution of a federal [] question [must be] 'necessary' to [the plaintiff's] case." *Gunn*, 568 U.S. at 529. For example, in *Grable*, the Supreme Court held that a federal issue was necessarily raised because resolution of the plaintiff's state law quiet-title action depended on the court's interpretation of a federal tax law provision. *Grable*, 545 U.S. 308. To determine whether the federal issue is "substantial," a court must look beyond the significance of the issue to the particular parties in the suit and instead "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260 ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will ***always*** be true when the state claim 'necessarily raises' a disputed federal issue." (emphasis in original)). Looking again to *Grable*, the Supreme Court there held that the federal issue was substantial because it "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases." *Empire*, 547 U.S. at 700 (internal quotations omitted). In contrast, the Supreme Court in *Empire* held that the federal issue there was not "substantial" because it was "fact-bound and situation-specific." *Id. See also Goldman v. Citigroup Global Markets Inc.*, 834 F.3d 242, 257 (3d Cir. 2016) ("Unlike the *NASDAQ* case, which implicated the proper functioning of a major national securities exchange, nothing about the Goldmans' case is likely to affect the securities market more broadly.").

Virtu contends that removal was proper because FTA's claims, while fashioned as state common law claims, actually arise under the federal securities laws, either because FTA artfully pleaded its claims to avoid stating a federal cause of action or because the state law claims raise a substantial issue of federal law under the *Gunn/Grable* factors. Specifically, Virtu suggests that because FTA's claims are based on Virtu's alleged failure to execute MOC orders appropriately, FTA's claims turn on the application and construction of federal rules governing MOC orders. Virtu points to NASDAQ and NYSE rules dictating when MOC orders must be placed, as well as FINRA "best execution rules" dictating FINRA members' obligations to route orders on behalf of their customers. (Def.'s Resp. at 5, Dkt. No. 21 (quoting FINRA Rule 5310.8 ("If a member receives an unsolicited instruction from a customer to route that customer's order to a particular market for execution, the member is . . . required to process that customer's order promptly and in accordance with the terms of the order.")).) For support, Virtu cites cases holding that the Securities Exchange Act of 1934 creates a federal duty for self-regulatory organizations ("SROs")[6] such as NASDAQ, NYSE, and FINRA to follow their own rules, and thus state law claims alleging breaches of that federal duty necessarily raise a substantial issue of federal law under the *Gunn*/*Grable* factors. *See NASDAQ OMX Group, Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1022 (2d Cir. 2014) (finding federal jurisdiction where the duty underlying the plaintiff's state claw claims was NASDAQ's duty pursuant to the Securities Exchange Act to operate fair and orderly markets); *Citadel Sec. LLC v. Chicago Bd. Options Exch., Inc.*, 16 C 9747, 2017 WL 118419 (N.D. Ill. Jan. 12, 2017) (finding federal jurisdiction where the complaint alleged that the defendant SROs violated their own rules "with which defendants are bound to comply under § 78s(g)(1) of the Exchange Act").

---

[6] "'Self-regulatory organization' means any national securities exchange, registered securities association, or registered clearing agency . . . established by section78*o*-4" of the Securities Exchange Act of 1934. 15 U.S.C. § 78c(a)(26).

But these cases are inapposite, and FTA's claims do not arise under federal law so as to vest this Court with jurisdiction. FTA's state law claims do not "necessarily raise a substantial issue of federal law" under the *Gunn*/*Grable* factors. Taking the first factor, federal law is not "necessarily raised" by FTA's claims. That Virtu was obligated to follow FINRA's best execution rules or NYSE and NASDAQ rules regarding MOC orders does not create an issue of federal law. As other courts have noted, FINRA, NYSE, and NASDAQ are private organizations and their rules and regulations, while subject to approval by the SEC, are not enacted by Congress or the SEC. *Jacobson v. Browne*, No. 11 C 4841, 2011 WL 6934829, at *4 (N.D. Ill. Dec. 29, 2011) ("FINRA's rules and regulations . . . are not enacted by [] Congress or the SEC. As such, even if FINRA's rules are implicated in this state law breach of contract action . . . that does not present a substantial federal question under the *Grable* rule."); *Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994) ("The NASD[7] is a private organization, not an arm of the government. A breach of the NASD rules does not present a question that arises under the laws of the United States within the meaning of 28 U.S.C. § 1331." (citing cases)); *Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co., Inc.*, 607 F. Supp. 2d 967, 979 (E.D. Wis. 2009) ("[I]t is inaccurate to assume that the interpretation of [FINRA] rules presents a substantial federal issue in the first instance. Reliance upon a violation of those rules to establish liability under state law does not provide a right to removal."). Moreover, while FINRA, NASDAQ, and NYSE may have federal duties under the Securities Exchange Act to comply with and enforce their own rules, these federal law duties do not extend to their members. *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 375–76 (2d Cir. 2016) ("[F]ederal law imposes obligations only on self-regulatory organizations—not on arbitration panels applying their rules. . . . Thus, this case is wholly unlike

---

[7] NASD is now FINRA.

*NASDAQ,* in which an obligation imposed by federal law on an SRO . . . was a necessary element of the state law actions."). For this reason, the cases upon which Virtu relies to suggest that the gravamen of FTA's complaint is the violation of a federal duty are inapposite, as those cases involved SROs violating their duty under the Securities Exchange Act to follow their rules. *See NASDAQ,* 770 F.3d 1010; *Citadel*, 2017 WL 118419.

Even if the complaint "necessarily raised" a federal issue, the *Gunn/Grable* factors still would not be satisfied because any such federal issue would not be "substantial." Whether or not Virtu violated SRO rules governing when and how MOC orders are placed is a "fact-bound and situation-specific" issue that does not implicate the interpretation of federal law in a way that would impact "the federal system as a whole." *Empire*, 547 U.S. at 700; *see also Goldman*, 834 F.3d at 257. Similarly, because the dispute here is factual, any federal issue is not "actually disputed" under *Gunn/Grable*. That is, even if a dispute over whether or not Virtu violated FINRA or stock exchange rules were properly considered to be a federal issue, such a dispute would be factual, not a dispute over the interpretation, application, or construction of federal law.[8] *See, e.g.*, *Goldman*, 834 F.3d at 257 (holding that where federal securities regulations were "invoked simply as evidence for the factual claim" that the breach occurred, "no question of federal law is 'actually disputed' . . . the fundamental dispute is not legal at all, but is factual"); *NASDAQ*, 770 F.3d at 1038 (Straub, J., dissenting) ("Unlike in *Grable* (where the parties argued

---

[8] This conclusion is unchanged by Virtu's additional argument that, in certain circumstances, MOC rules dictate that MOC orders will not be executed at the closing price, notwithstanding the customer's instructions, and thus the Court must "interpret and construe" the MOC rules to decide whether a breach occurred and any damages resulted. This, too, is a "fact-bound and situation-specific" issue that requires simple application of MOC rules, rather than interpretation, application, or construction of federal law. Moreover, Virtu's assertion that it is protected from liability for the alleged breach by certain MOC rules is a defense, which—even if sufficient to create a federal issue—is not enough to create federal jurisdiction under § 1331. *See, e.g.*, *Chicago Tribune*, 680 F.3d at 1003.

for competing interpretations of a federal statute) or *Gunn* (where one party argued that a patent law exception applied to his lease and the other party argued that it did not), no party here disputes the existence, validity, or construction of this Exchange Act duty.").

Virtu's separate argument that FTA's cause of action is created by federal law, but FTA artfully pleaded a federal claim as a state law contract claim, also fails. Virtu cites the Seventh Circuit's decision in *Kurz v. Fidelity Management & Research Co.*, 556 F.3d 639, 642 (7th Cir. 2009), to support its contention that, as an alleged violation of SRO rules by an investment adviser cannot support a breach of contract claim, FTA's claim must actually be a federal securities claim. (Def.'s Resp. at 8 (citing *Kurz*, 556 F.3d at 642 ("[Plaintiff] had a federal securities claim, or he had nothing."))).) But in *Kurz*, the claims at issue were **class action** breach of contract claims related to the defendant adviser placing trades through a broker that was bribing the defendant's employees to place trades through that broker. The Seventh Circuit affirmed the lower court's holding that such claims were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), which preempts certain private class actions brought under state law and alleging "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." *Kurz*, 556 F.3d at 640 (citing 15 U.S.C. § 78bb(f)).

*Kurz* is inapposite here because the claims at issue are not class action claims, and thus they are not preempted by SLUSA. Moreover, nothing in FTA's complaint can reasonably be construed as a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f). Virtu's related argument that FTA must have artfully pleaded to avoid stating a federal claim because the complaint does not point to a valid contract similarly fails. Virtu makes much of the fact that any alleged contract was between FTA

and Virtu, while the only entities to suffer damages from the alleged breach were the Funds. But whether FTA has adequately alleged the elements of a breach of contract claim and whether the Funds properly assigned their claims to FTA are merits questions—not questions addressing whether the complaint arises under federal law.

## CONCLUSION

For these reasons, the Court finds that FTA's claims are not created by federal law, nor do they raise substantial federal issues. The Court therefore does not have original subject-matter jurisdiction under U.S.C. § 1331 and removal was inappropriate. Plaintiff's Motion to Remand (Dkt. No. 15) is therefore granted.

Dated: September 30, 2018

ENTERED:

_____
Andrea R. Wood
United States District Judge